IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-mj-00033-STV

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SHAWN MICHAEL VENCEL,

      Defendant.

## MATERIALS AND MEMORANDUM IN SUPPORT RE: DETENTION HEARING

The Defendant, Shawn Michael Vencel ("Mr. Vencel"), by and through undersigned counsel, David E. Johnson, hereby files the attached Materials in Support, in advance of the Detention Hearing in this case, set for July 17, 2020 at 2:00 p.m.[1]

### Introduction

Sight. Vision. One can hardly think of a more powerful incentive to comply with bond conditions in this case. And that is what is at risk at this stage of Mr. Vencel's case: literally, his ability to see. The government wants this Court "to discount" this fact. Doc. 14 at 16. There should be no discount on a person losing one of their five senses, especially when it would occur in a detention facility.

Recognizing the unusual stakes at issue – Mr. Vencel's vision – bond should be granted to allow Mr. Vencel the ability to obtain a much-needed Corneal Transplant as a result of his advanced eye condition, Keratoconus. Over state prosecutor's objections,

---

[1] Mr. Vencel has no objection to the government proceeding by proffer. See Doc. 14 at 2. Further, Mr. Vencel intends to submit a Waiver of Preliminary Hearing.

that is the course of action taken by the Court in Mr. Vencel's Boulder County cases (case numbers 19CR2174 and 19CR2396). Here, Mr. Vencel asks this Court to proceed in a similar manner: impose strict bond conditions that would allow him to obtain treatment and save his sight.

In addition to Mr. Vencel's treatment need, there is another aspect of this case that the government ignores: Mr. Vencel's successful participation in numerous forms of counseling and therapy over the past eight months.  Mr.  Vencel has been in continuous state custody since, approximately, December 7, 2019.  He has maintained sobriety. More importantly, he has engaged in necessary forms of treatment/therapy to continue sobriety on bond.

In this filing, undersigned counsel cannot at this time, and thus does not intend to, respond to every argument the government made in its filing and its exhibits (filed at 11:47 p.m. on July 16, and first reviewed by counsel the following morning).  Counsel is in the process of reviewing the submitted material and is expected to be prepared to respond at today's detention hearing at 2 p.m. Nevertheless, this filing is intended as a preliminary response, including the submission of materials for this Court's review.

Ultimately, after reviewing the unique aspects of this case, stringent bond conditions should be imposed.

## Legal Framework

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  It is for this reason that the Bail Reform Act significantly favors release over detention.  "There

can be no doubt that this Act clearly favors nondetention." *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). After reviewing the history of the relevant statutory provisions, one court correctly observed: "Consistent with the intent expressed in the legislative history, the statutory scheme of the Bail Reform Act favors release over pretrial detention." *United States v. Barnett*, 986 F. Supp. 385, 392 (W.D. La. 1997). That Court went on to conclude that "[r]elease should be denied only in **rare** circumstances, and doubts regarding the propriety of release **should be resolved in the defendant's favor**. This is particularly true in cases where no statutory presumption against release exists." *Id*. at 395 (citations omitted) (emphasis added). *See also United States v. Montoya*, 486 F.Supp.2d 996, 999 (D. Az. 2007) ("Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)).

"The government bears the burden of proof." *United States v. Walters*, 89 F.Supp.2d 1217 (D. Kan. 2000). Here, there is no statutory presumption against release. The government admits that. *See* Doc. 14 at 5 ("There is no such presumption for cases like this one"). Thus, the structure of the Act confirms that "[o]nly as **a last resort** should pretrial detention be invoked." *United States v. Cox*, 635 F.Supp. 1047, 1049 (D. Kan. 1986) (emphasis added).[2]

---

[2] Contrary to the government's argument, the defense counsel at Mr. Vencel's initial appearance did *not* argue about the "criteria for detention," Doc. 14 at 5, as detention was an issue at the initial appearance. Instead, because this case is not covered by § 3142(f)(1), at issue at that time was whether a detention hearing should even occur ---

Even if a defendant presents a risk of nonappearance or danger to the community, release must still be ordered if conditions exist that would "reasonably assure" a defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(1). Given the unique circumstances of this case, as detailed below, this Court should release Mr. Vencel on stringent bond conditions.

## Materials in Support

Mr. Vencel's advanced form of Keratoconus is not based on any "subjective" belief of Mr. Vencel; nor is it the result of "emotional manipulation." Doc. 14 at 16. Instead, it is, in part, the result of Mr. Vencel's visit to the Boulder Eye Surgeons on February 20, 2020. See Attachment 1 (with its Exhibit 1). At that appointment, the doctor told Mr. Vencel that he had the most severe form of Keratoconus he had seen.

Since that appointment, Mr. Vencel has already lost almost all vision in his right eye. His left eye is deteriorating, and it will only continue to do so. If the condition continues to go untreated, severe additional damage to Mr. Vencel's sensory system is expected. Soft tissue damage in the brain is also a possibility. A transplant is the only treatment for the status of his Keratoconus. The government's assertion that Mr. Vencel's disease "progresses slowly" is not reality. Doc. 14 at 17.

Attachment 1 consists of Mr. Vencel's Motion for Modification of Bond filed in his cases in Boulder County District Court, case numbers 19CR2174 and 19CR2396, filed

---

i.e. whether the requirements of § 3142(f)(2)(A) or (B) were satisfied. The government seemingly does not understand this distinction.

June 3, 2020. Mr. Vencel incorporates the arguments made in that filing herein.[3]

Specifically, Mr. Vencel sought bond in those cases because he is in need of a corneal transplant to save his vision. He seeks bond in the instant federal case, in part, for the same reasons. As confirmed herein in Exhibit 1 to Attachment 1, the Boulder County Jail confirmed Mr. Vensel's diagnoses.

Attachment 1's Exhibit 1 also demonstrates the folly of the government's suggestion that Mr. Vencel can get adequate care in custody. Doc. 14 at 1. Specifically, this Court need not "presume" anything. *Id.* Despite attempts to the contrary, Mr. Vencel will not obtain the necessary treatment while an inmate.

Once Boulder County Eye surgeons confirmed that a transplant was necessary and that it was a time-sensitive procedure, they sought to obtain Mr. Vencel such treatment. On May 26, 2020, UCHealth's Anschutz Rodgers Eye Center denied service "due to his inmate status." See Attachment 1 (Exhibit 1). Demonstrating the time-sensitive nature of the issue, *that same day*, the eye surgeons then sent a referral to

---

[3] Notably, the state provisions relating to imposition of bond conditions largely mirror the federal provisions this Court must consider. *See* Attachment 1 at 2 ("Law"); *see also* 18 U.S.C. § 3142(g). Further, there are two facts contained in the state bond motion that are not incorporated herein. First, as it relates to his education, Mr. Vencel does not have any college degree, a mistake state counsel made in submitting his bond motion. Mr. Vencel did attend CU Boulder, but did not obtain a degree. And he does hope to obtain a Master's Degree someday. Second, as it relates to his residence on bond, Mr. Vencel now seeks placement in a halfway house. From the halfway house, if permitted, a stable longer-term residence can be established. Specifically, Mr. Vencel speaks frequently with his daughter's mother, and the pair both believe a halfway house placement (or some other stable residency) should now be sought.

Denver Health.  On May 27, 2020, the Boulder County Jail was "informed that Denver Health Correctional Care Medical Facility denied the referral." *Id.*

As written by Boulder County Sherrif's Office, Health Services: "**It is recommended that Mr. Vencel receive a Corneal Transplant as a result of his keratoconus. The jail has worked to obtain this treatment for Mr. Vencel but have been unsuccessful due to his inmate status. We recommend a PR bond so the patient can seek the recommended treatment for his vision**." *Id.* (emphasis added).[4]

Attachment 1's Exhibit 3 also shows some (but not all) of the counseling and therapy Mr. Vencel has undergone while in custody.  Almost immediately upon his arrest on December 7, 2019, Mr. Vencel started Medical Assisted Treatment (MAT). It consisted of therapy one to two times a week.  He completed that regimen.  Once completed, he enrolled in the jail's Jail-Based Treatment Program. At first, an assessment was completed. Treatment was then tailored to his needs. He completed weekly packets, learning skills.  He participated in one-on-one counseling sessions. And he also participated in Comprehensive Opioid Abuse Program (COAP). *See* Attachment 1. As will be further explained at the detention hearing, the substance treatment he received since December 2019 has been a life-changer.

---

[4] The Jail's request was for a "temporary PR bond".  That was not granted by the state court.  Instead, a straight PR bond, with conditions, was granted.  A "temporary" bond would have been the equivalent of a furlough.  Mr. Vencel instead sought a straight PR bond with conditions, and that request was granted by the state court.

Attachment 2 shows the status of Mr. Vencel's bond in his pending state cases. If bond is granted, Mr. Vencel would not be under supervision by only this Court. Rather, he will be under the supervision of several probation offices, complying with their own restrictive conditions. For example, when the Court granted bond in Boulder County case numbers 19CR2174 and 19CR2396, GPS monitoring was imposed along with several other conditions. In other cases, Mr. Vencel has already posted (or is prepared to post) monetary bond.[5] This is further incentive for Mr. Vencel to comply with bond conditions and appear in court: the existence of numerous surety bonds, several layers of supervision and an already-imposed condition of GPS monitor.

Finally, Attachment 4 is a letter from Mr. Vencel's father, who is immensely supportive of Mr. Vencel.

## Conditions: Bond Should be Granted

Mr. Vencel asks that bond be granted with stringent conditions. Among those conditions the Court may wish to impose are:

- Abide by all conditions of bond imposed in all pending state cases.
- Submitting to Supervision by the U.S. Probation Office (another layer of supervision, in addition to the state supervision already imposed).

---

[5] The only outstanding bond that Mr. Vencel is may not be able to post is the current cash bond in Broomfield County. However, as shown in Attachment 3, the state prosecutor in that case has told both his state counsel and the state court that the case would be dismissed now that federal proceedings have started. Undersigned counsel has also spoken with Mr. Vencel's attorney in the Broomfield case, who confirmed that she has always been told the Broomfield case would be dismissed once he was taken to court for the federal case.

- Seek employment.
- Not obtain a passport (Mr. Vencel's passport is expired, and in any event, it has already been turned over to Boulder County).
- No out-of-state travel without permission of the Court.
- Obtain medical and psychiatric treatment.
- Reside at a halfway house and abide by its rules (including restrictions on ability to leave the halfway house), unless and until an alternative residence is established and approved by the probation office.
- Not possess a firearm or other destructive device.
- Not use any alcohol or illegal drugs.
- Submit to drug testing and treatment.
- Location restriction program, if the Court deems necessary.
- Submit to location monitoring GPS.
- Report all contact with law enforcement.
- Shall not access the internet, with the exception of work-seeking or work-related duties. If required to access the internet for work-related duties, the defendant shall notify his employer of the pending charges and a written acknowledgement must be provided by them to assure they have advised of same.[6]
- Allow the probation office to monitor access to personal computers or laptops.

---

[6] This proposed condition is intended to address the government's concern that Mr. Vencel's access to an internet connection might be of concern. *See* Doc. 14 at 14 (first bullet point).

**Conclusion**

WHERFORE, based upon the foregoing, and to be supplemented at the Detention Hearing, this Court should grant Mr. Vencel bond under stringent conditions.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on July 17, 2020, I filed the foregoing **MATERIALS AND MEMORANDUM IN SUPPORT RE: DETENTION HEARING** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Bryan D. Fields, Assistant United States Attorney
E-mail:  bryan.fields3@usdoj.gov

      I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Shawn Michael Vencel (via U.S. mail)

      s/ David E, Johnson
      DAVID E. JOHNSON
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone:  (303) 294-7002
      FAX:  (303) 294-1192
      David_johnson@fd.org
      Attorney for Defendant